Case 1:16-cv-00010 Document 19 Filed in TXSD on 09/09/16 Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
September 09, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **RAQUEL HINOJOSA,** | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. B-16-10 |
| | § | |
| **PETRA HORN, ET AL.,** | § | |
|     Defendant. | § | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On January 15, 2016, Plaintiff Raquel Hinojosa ("Hinojosa") filed a complaint against Defendants: Petra Horne, in her official capacity as Port Director of the Brownsville Port of Entry; John F. Kerry, in his official capacity as Secretary of State; Jeh Johnson, in his official capacity as Secretary of the Department of Homeland Security; and the United States of America (collectively "Defendants").[1] Dkt. No. 1.

In that complaint, Hinojosa alleged that her U.S. passport application was arbitrarily and capriciously denied. Id. According to Hinojosa, this denial prevented her from lawfully re-entering the United States. Id. Hinojosa's complaint sought a writ of habeas corpus, as well as relief under the Administrative Procedures Act ("APA"). Id.

On March 28, 2016, Defendants filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1), asserting that the Court lacked jurisdiction to consider Hinojosa's claims. Dkt. No. 7. Hinojosa filed a response and Defendants filed a reply. Dkt. Nos. 9, 12.

After reviewing the record and the relevant case law, the Court recommends that the motion to dismiss be granted. Hinojosa has failed to follow the procedures established by law for those in her position, which precludes jurisdiction in this Court to consider her claims.

---

[1] The Court notes that any claims against Horne, Kerry and Johnson in their official capacities constitute a suit against the agencies that they lead. Culbertson v. Lykos, 790 F.3d 608, 623 (5th Cir. 2015).

1

**I. Background**

    **A. Factual Background**

According to the complaint, Hinojosa was born in June 1973 in Brownsville, Texas, which would make her a natural-born American citizen. Dkt. No. 1, p. 3. "Her birth was assisted by Guadalupe Gonzalez, a midwife." Id. An American birth certificate – signed by Gonzalez – was issued on June 25, 1973. Id; Dkt. No. 2-1, pp. 3-4. It listed Mario Hinojosa as her father. Dkt. No. 2-1, pp. 2-3. According to the complaint, Mario Hinojosa "split from" Hinojosa's mother shortly after Hinojosa's birth. Dkt. No. 1, p. 4.

On August 24, 1973, a Mexican birth certificate was issued for Hinojosa, which indicated that she had been born in Matamoros, Mexico. Dkt. No. 2-1, p. 38. This birth certificate listed Higinio Flores as Hinojosa's father. Id.[2]

In July 2014, Hinojosa filed for a United States passport. Dkt. No. 1, p. 4. On September 10, 2015, the State Department requested additional evidence of Hinojosa's citizenship. Id. Hinojosa sent additional evidence, including affidavits from Mario Hinojosa and Hinojosa's older half-sister. Id, pp. 4-6.

On November 13, 2015, the State Department denied Hinojosa's passport application, informing Hinojosa that "there is a reason to believe that the birth attendant who filed your birth certificate did so fraudulently and you have not submitted any early public records to support your birth in the United States. You have also indicated that you can not submit any evidence that supports your birth in Texas." Dkt. No. 1, pp. 6-7.

According to Hinojosa, she "is currently stranded in Mexico" and is "unable to return to the U.S., engage in other international travel, or engage in any of the common occupations in the U.S." Dkt. No. 1, p. 7.

    **B. Procedural Background**

On January 15, 2016, Hinojosa filed a complaint against the Defendants. Dkt. No. 1.

---

[2] DNA testing, performed in May 2015, established that Mario Hinojosa is Hinojosa's biological father. Dkt. No. 2-1, p. 25.

In her complaint, Hinojosa seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, and a declaratory judgment that she is a U.S. citizen, pursuant to 8 U.S.C. § 1503. Id. She also asserts that jurisdiction exists in this Court, pursuant to the APA. Id.

On March 28, 2016, Defendants timely filed a motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(1). Dkt. No. 7. In that motion, Defendants asserted that Hinojosa is not in custody for habeas purposes and that she failed to exhaust her remedies prior to filing the habeas petition. They also asserted that Hinojosa cannot receive relief under 8 U.S.C. § 1503(a), because she is not physically present in the United States. Id. Lastly, they argue that the APA does not grant an independent basis for jurisdiction in this case. Id.

On April 9, 2016, Hinojosa timely filed her response brief. Dkt. No. 9. Hinojosa argued that she is in custody for habeas purposes because she is a U.S. citizen who is unable to return to this country. Id. She also asserted that jurisdiction exists under the APA because 8 U.S.C. § 1503(b)&(c) do not provide an adequate remedy at law. Id. Hinojosa argues that she is permitted to pursue an APA claim under Rusk v. Cort, 369 U.S. 367 (1962). Id.

On April 19, 2016, Defendants timely filed a reply brief. Dkt. No. 12. In that reply, Defendants reiterated that Hinojosa is not in custody because she is not "subject to significant restraints on her liberty [that are] not shared by the public generally." Id, p. 3. Defendants also assert that jurisdiction does not exist under the APA. Id.

On August 9, 2016, Defendants filed a motion for leave to file notice of supplemental authority, asking the Court to consider the opinion in Villarreal v. Horn, No. 1:15-cv-00111, --- F.Supp.3d ----, 2016 WL 4094708 (S.D. Tex. July 29, 2016), which was issued after briefing was concluded in this case. Dkt. No. 16. On that same day, Hinojosa asked the Court to also consider the motion for reconsideration filed in Villarreal. Dkt. No. 17.

On August 11, 2016, the Court granted the motion for leave to file notice of supplemental authority, stating that it would consider the Villarreal opinion and the arguments made in the motion for reconsideration "for whatever persuasive value they may provide." Dkt. No. 18.

**II. Applicable Law**

    **A. Jurisdiction**

The threshold question, before considering the substance of any claim, is whether the court possesses jurisdiction over the claim. This is the case, because federal courts are courts of limited jurisdiction, whose authority exists only within the boundaries established by Congress and the United States Constitution. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583-84 (1999). The plaintiff bears the burden of proving jurisdiction. Choice Inc. of Tex. v. Greenstein, 691 F.3d 710, 714 (5th Cir. 2012).

A motion filed under "Rule 12(b)(1) of the FEDERAL RULES OF CIVIL PROCEDURE allows a party to challenge the subject matter jurisdiction of the district court to hear a case." Ramming v. U.S., 281 F.3d 158, 161 (5th Cir. 2001). A court may properly dismiss a claim for lack of jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Mississippi, Inc. V. City of Madison, Miss., 143 F.3d 1006, at 1010 (5th Cir. 1998).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." Ramming, 281 F.3d at 161. The Court may look to the following to find a lack of jurisdiction: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id. (citing Barrera-Montenegro v. U.S., 74 F.3d 657, 659 (5th Cir. 1996).

    **B. Habeas Corpus**

In order for a court to have habeas jurisdiction under 28 U.S.C. § 2241, the petitioner must be "in custody" when he or she files the petition. Zolicoffer v. U.S. Dep't of Justice, 315 F.3d 538, 540 (5th Cir. 2003). Physical detention is not required to meet this requirement. Rosales v. Bureau of Immigration & Customs Enf't, 426 F.3d 733, 735 (5th Cir. 2005). "History, usage, and precedent can leave no doubt that, besides physical imprisonment, there are other restraints on a man's liberty, restraints not shared by the public

generally, which have been thought sufficient in the English-speaking world to support the issuance of habeas corpus." Jones v. Cunningham, 371 U.S. 236, 240 (1963) (emphasis added).

A habeas petitioner is required to exhaust all available administrative remedies prior to filing a habeas petition. Smith v. Thompson, 937 F.2d 217, 219 (5th Cir. 1991) (citing Hessbrook v. Lennon, 777 F.2d 999, 1003 (5th Cir. 1985)). "The exhaustion of administrative remedies doctrine requires not [only that] administrative remedies selected by the complainant be first exhausted, but instead that all those prescribed administrative remedies which might provide appropriate relief be pursued prior to seeking relief in the federal courts." Hessbrook, 777 F.2d at 1003. Thus, it is the possibility of relief – not the likelihood of success or how long the prescribed remedy make take – that dictates which remedies must be pursued to satisfy the requirement for exhaustion.

### C. Administrative Procedures Act

The Administrative Procedures Act provides for judicial review of agency actions. 5 U.S.C. § 706(1). As relevant here, the Court only has jurisdiction to review agency actions that constitute "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. If there is "a statutory and regulatory scheme that specifically provides for judicial review," the APA does not apply. Dresser v. Meba Med. & Benefits Plan, 628 F.3d 705, 711 (5th Cir. 2010).

In order for an agency action to be considered final, it must (1) mark the "consummation" of the agency's decision making process and (2) it must be a decision by which "rights or obligations have been determined," or from which "legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 178 (1997).

### D. Citizenship Determinations

If a United States citizen or national is denied a "a right or privilege as a national of the United States," there is a statutory vehicle for a declaratory judgment that the person is a citizen. 8 U.S.C. § 1503.

If the plaintiff is "within the United States," she may file a complaint, i.e. a law suit, in a Federal District Court against the head of the department or agency seeking a declaratory judgment that the petitioner is a United States citizen. 8 U.S.C. § 1503(a).

On the other hand, if the plaintiff is "not within the United States," she must follow the procedures found in §§ 1503(b) & (c). Pursuant to § 1503(b), the petitioner must "make application to a diplomatic or consular officer of the United States in the foreign country in which [s]he is residing for a certificate of identity for the purpose of traveling to a port of entry in the United States and applying for admission." 8 U.S.C. § 1503(b). A certificate of identity is given if there is a substantial basis to conclude that the person may be a U.S. citizen. Id. The consular or diplomatic officer's denial of the issuance of a certificate of identity can be appealed only to the Secretary of State. Id.[3]

After making the application, if a certificate of identity is issued, then the petitioner "may apply for admission to the United States at any port of entry" and would be subject to the immigration proceedings that apply to "aliens seeking admission to the United States." 8 U.S.C. § 1503(c). If, at the conclusion of immigration proceedings, the Attorney General determines that the petitioner is not entitled to admission, it is then that judicial review is available in the form of habeas corpus. Id.

Thus, section 1503 creates a binary distinction. If the alien is "within the United States," then she utilizes the procedure found at § 1503(a). If the alien is "not within the United States," then she is required to utilize the procedures found at §§ 1503(b) & 1503(c).

**III. Analysis**

The Fifth Circuit has observed that "the immigration law of the United States is inexcusably complicated and in need of immediate revision." Villa v. Holder, 464 Fed. App'x. 270, 272 (5th Cir. 2012). This case may be one more example of the accuracy of that appraisal.

---

[3] As discussed later in this report and recommendation, if the Secretary of State denies the issuance of a certificate of identity, a petitioner would have a valid APA claim. See Infra. section III (B).

It is undisputed that Hinojosa has two birth certificates: an American one that indicates birth in the United States and a Mexican one that indicates birth in Mexico. There is an obvious and irreconcilable conflict between these birth certificates. This case is about what procedures Hinojosa must follow in order to adjudicate her claim that her American birth certificate is the accurate one. Until she follows these procedures, there is no jurisdiction in this Court to adjudicate her claim.

As to Hinojosa's habeas claim, the Court must first determine whether Hinojosa is "in custody" for habeas purposes and, then, whether she has exhausted all of her remedies prior to filing a habeas petition. As to the APA claim, the Court must resolve whether an APA claim is available to correct Hinojosa's claimed denial. Lastly, the Court must sort out whether Hinojosa can seek a declaration of citizenship under 8 U.S.C. § 1503(a). The Court will address each of these issues in turn.

### A. Habeas Corpus

Hinojosa has asserted that she has a valid habeas corpus claim. However, she has failed to meet two prerequisites: (1) being in custody; and (2) exhausting her administrative remedies.

#### 1. In Custody

Hinojosa asserts that she satisfies the "in custody" requirement for habeas relief because she is a United States citizen, who is not permitted to enter this country and not permitted to travel internationally. Despite her claim, any limitations on her actions do not amount to "in custody" for habeas purposes.

As discussed earlier, "in custody" does not require physical custody – such as imprisonment – but it must involve "restraints not shared by the public generally." Jones v. Cunningham, 371 U.S. at 240. For example, persons on parole or probation are "in custody," because their freedom is curtailed in ways not shared by the general public. Jones v. Cunningham, 371 U.S. at 240. The same holds true for individuals on supervised release. U.S. v. Brown, 117 F.3d 471, 475 (11th Cir. 1997). Indeed, even a person who was ordered

by a court to attend alcohol rehabilitation classes was found to be "in custody." Dow v. Circuit Court of the First Circuit, 995 F.2d 922, 923 (9th Cir. 1993).

The deportation of a non-citizen does not place that person "in custody," even though they are unable to lawfully re-enter the United States. Miranda v. Reno, 238 F.3d 1156, 1159 (9th Cir. 2001); Chavez-Coronado v. Cockrell, 2003 WL 21505417, at *4 (N.D. Tex. Apr. 4, 2003). A parent whose parental rights have been terminated is also not in custody. Salinas v. Texas Dep't of Family & Protective Servs., 2012 WL 13685, at *1 (W.D. Tex. Jan. 4, 2012). Thus, the custody requirement requires that the person's movements and freedom be significantly curtailed.

Hinojosa, however, is not being subjected to restraints that are not shared by all U.S. citizens. It is illegal for a United States citizen "to depart from or enter, or attempt to depart from or enter, the United States unless he bears a valid United States passport." 8 U.S.C. § 1185(b). All U.S. citizens are required to prove their citizenship prior to receiving a passport. 22 U.S.C. §§ 212, 213.

Every United States citizen who does not possess a valid passport – a group which constitutes a majority of Americans[4] – are similarly unable to travel internationally or to legally re-enter the United States after traveling. It cannot fairly be said that these millions of people are in custody for habeas purposes. See Villarreal, 2016 WL 4094708, *4 (stating that a U.S. citizen who is physically in Mexico, but lacks a valid U.S. passport, is not in custody for habeas purposes).

Similarly, Hinojosa is not in custody for habeas purposes. Because custody is a condition precedent to habeas jurisdiction, this claim should be dismissed without prejudice for lack of jurisdiction.

---

[4] In fiscal year 2015, the State Department reported that there were just over 125 million valid U.S. passports in circulation. Passport Statistics, U.S. Department of State (https://travel.state.gov/content/passports/en/passports/statistics.html). For the sake of comparison, the U.S. population is estimated to be around 321 million people as of July 1, 2015. The United States, CIA World Fact Book (https://www.cia.gov/library/publications/the-world-factbook/geos/us.html).

### 2. Exhaustion of Remedies

Even if the Court considered Hinojosa to be in custody for <u>habeas</u> purposes, she has not exhausted her administrative remedies, which produces the same result – that her case should be dismissed for lack of jurisdiction.

As previously noted, Hinojosa must exhaust all administrative remedies which could potentially provide her relief, not just the ones she believes are convenient or advantageous. <u>Hessbrook</u>, 777 F.2d at 1003. The relevant statute in this case – 8 U.S.C. § 1503(c) – provides a method by which <u>habeas</u> claims can be adjudicated in federal court. If a person, who is outside of the United States, receives a certificate of identity from the State Department, they may apply for admission into the United States at a port of entry. 8 U.S.C. § 1503(c). This application for admission would require the petitioner to utilize the immigration court system. <u>Id</u>. If the Attorney General ultimately denies the petitioner admission to the United States, then the petitioner may file a <u>habeas</u> <u>corpus</u> petition.[5]

The Court understands that this route has the potential to be circuitous, expensive, and time-consuming. It is, however, the route that Congress has established for people, who are not physically present in the United States, to utilize before receiving judicial review of their claims to citizenship. Most importantly, for present purposes, this route might provide Hinojosa with the relief that she seeks: a finding that she is a United States citizen. Her failure to utilize this route means that she has not exhausted her administrative remedies. <u>Hessbrook</u>, 777 F.2d at 1003.

Accordingly, this claim should be dismissed without prejudice for lack of jurisdiction.

---

[5] As previously noted, if the issuance of a certificate of identity is denied by the State Department, the statute does not explicitly grant a right of judicial review of the denial. 8 U.S.C. § 1503(b). As discussed in the next section, under § 1503(b) a petitioner located outside of the United States may have a valid APA claim if there has been a denial of a certificate of citizenship by the final authority within the State Department. Thus, there are different requirements for the exhaustion of administrative remedies, different agencies involved, and different theories for federal court jurisdiction related to §§ 1503(a) and 1503(b)-(c).

**B. APA Claim**

**1. No final agency action**

Hinojosa asserts that the APA also grants this Court jurisdiction to consider her claim. This argument is not presently supported by the law.

As previously noted, jurisdiction does not exist under the APA unless the petitioner is challenging a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. If there is "a statutory and regulatory scheme that specifically provides for judicial review," then the APA is inapplicable. Dresser, 628 F.3d at 711.

In this case, there is a statutory scheme that specifically provides for judicial review. If Hinojosa receives a certificate of identity – from a consular or other diplomatic office outside of the United States – she can present herself at a port of entry and seek admission to the United States. 8 U.S.C. § 1503(c). If she is denied admission, then her claims can be judicially reviewed in a habeas proceeding. Id. Thus, there is a specific statutory scheme that provides judicial review, making the APA inapplicable in this case. Dresser, 628 F.3d at 71; see also Villarreal, 2016 WL 4094708, *6 (stating that an APA claim was foreclosed when relief is available under § 1503).

Furthermore, the denial of the passport application does not constitute final agency action. If there are further administrative or statutory remedies available to the petitioner, then the agency action is not final for APA purposes. Qureshi v. Holder, 663 F.3d 778, 781 (5th Cir. 2011). The denial of the passport application is an intermediate step in a lengthy regulatory and statutory process that culminates at the process outlined in 8 U.S.C. § 1503. See Am. Airlines, Inc. v. Herman, 176 F.3d 283, 288 (5th Cir. 1999) (noting that intermediate agency action is not a final agency action if there other procedural remedies available).

The Court notes that if Hinojosa were to apply for a certificate of identity; have her application denied; appeal to the Secretary of State and have the Secretary of State affirm that denial; then she may have a claim under the APA. At that point, the Secretary of State's

10

decision would constitute final agency action – because it would be the consummation of the State Department's decision-making process – and the decision would determine Hinojosa's legal right to a passport. Bennett, 520 U.S. at 178. Furthermore, the statute does not explicitly provide – or prohibit – judicial review, so she would have no other adequate remedy in court. 5 U.S.C. § 704. Under those specific circumstances, Hinojosa would have a valid APA claim; but those are not the circumstances currently presented in this case.

### 2. Rusk does not dictate a different result

Hinojosa cites Rusk v. Cort, 369 U.S. 367 (1962) for the proposition that she may pursue remedies under either 8 U.S.C. § 1503 or the APA. In Rusk, the Supreme Court opined that the APA provided an independent basis for jurisdiction to consider the plaintiff's citizenship claim. Rusk, 369 U.S. at 372.

What Hinojosa fails to take into account is that the Supreme Court later expressly reversed its holding that the APA provided an independent basis for jurisdiction. Califano v. Sanders, 430 U.S. 99, 105 (1977). The Supreme Court specifically cited Rusk as one of the cases that was abrogated by its ruling in Califano.

> Three decisions of this Court arguably have assumed, with little discussion, that the APA is an independent grant of subject-matter jurisdiction. See Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971); Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); Rusk v. Cort, 369 U.S. 367, 372, 82 S.Ct. 787, 790, 7 L.Ed.2d 809 (1962). However, an Act of Congress enacted since our grant of certiorari in this case now persuades us that the better view is that the APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions.

Califano, 430 U.S. at 105. Thus, Hinojosa's argument is contrary to the law as it currently stands.

Accordingly, the Court lacks jurisdiction to consider Hinojosa's APA claim and it should be dismissed without prejudice for lack of jurisdiction.

### C. Declaration of Citizenship

Hinojosa seeks a judicial declaration, pursuant to 8 U.S.C. § 1503(a), that she is a

United States citizen. This statutory vehicle is unavailable to her under the facts of this case.

As previously mentioned, U.S.C. § 1503 creates a binary procedure, depending upon the petitioner's location. If the petitioner is within the United States, she can sue in federal court for a declaration of citizenship under § 1503(a); if the petitioner is not within the United States, she must apply for a certificate of identity and follow the procedures set out in §§ 1503(b) & (c).

It is clear from the plain text of the statute that if a person who is "within the United States" is denied a passport, then he or she may sue the Government for a judicial declaration of their citizenship. 8 U.S.C. § 1503(a). The key question to be resolved is whether Hinojosa must be legally and physically present in the United States in order to pursue this remedy.

As an initial matter, the Court notes that it is "a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (internal quotations omitted). The Court must read this statute accordingly.

If persons who are not physically and legally present in the United States are permitted to pursue their claims under § 1503(a), then the word "not" in § 1503(b) is superfluous. If anyone who is claiming to be a citizen – no matter where they are currently living – can simply sue the Government under § 1503(a), then the phrase "not within the United States" in § 1503(b) is of no effect. The only logical way to read this statute and to give effect to <u>all</u> of its words is to conclude that Congress intended two different procedures; one that applies to individuals physically present in the United States and a different procedure for those individuals who are not physically present in the United States. There seems to be nothing novel in such an approach.

This conclusion is consistent with the decisions of several federal courts, who have concluded that § 1503(a) only applies to those individuals who are physically present in the

United States. Okere v. United States of Am. Am. Citizens Servs., No. 14 C 4851, 2015 WL 3504536, at *3 (N.D. Ill. June 2, 2015); Bensky v. Powell, 391 F.3d 894, 896 (7th Cir. 2004) (section 1503(a) "is inapplicable to someone who is not in the United States when he sues"); Said v. Eddy, 87 F. Supp. 2d 937, 940 (D. Alaska 2000).

On the other hand, at least three courts, albeit in dicta, seem to have stated that, in Rusk, the Supreme Court permitted a § 1503(a) claim to be filed by a petitioner living abroad. Parham v. Clinton, 374 F. App'x 503, 505 n. 2 (5th Cir. 2010) (unpubl.)[6]; Kahane v. Sec'y of State, 700 F.Supp. 1162, 1165 n. 3 (D.D.C. 1988); Icaza v. Shultz, 656 F.Supp. 819, 822 n. 5 (D.D.C. 1987). A close reading of Rusk, however, does not support Hinojosa's assertion of authority.

The petitioner in Rusk was a doctor named Joseph Cort, who fled the United States to avoid being drafted. Rusk, 369 U.S. at 369. The State Department revoked Cort's citizenship under a law that stripped citizenship from those who evaded the draft. Id.

Cort, who was living in Czechoslovakia at the time, sued the Secretary of State in federal court seeking a declaration that he retained his citizenship. Id. The Supreme Court specifically identified: "the question posed is whether the procedures specified in § 360(b) and (c)[7] provide the only method of reviewing the Secretary of State's determination that Cort has forfeited his citizenship." Rusk, 369 U.S. at 375 (footnote added). The Supreme Court held that the APA provided an independent jurisdictional basis to review the Secretary of State's determination. Rusk, 369 U.S. at 379-380. That specific holding regarding the APA, as discussed earlier, was later expressly abrogated by the Supreme Court in Califano. 430 U.S. at 105.

The Seventh Circuit has observed that Rusk did not hold that § 1503(a) was available

---

[6] "Unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case." 5TH CIR. R. 47.5.4.

[7] The references to § 360 are references to section 360 of the Immigration and Nationality Act; that section was codified at 8 U.S.C. § 1503.

to persons outside of the United States. Bensky, 391 F.3d at 896. Indeed, there is little basis for concluding that Rusk currently permits a petitioner, who is outside of the United States, to pursue a claim under § 1503(a).

For example, in an unpublished case – Parham – the Fifth Circuit addressed the applicability of Rusk in a footnote. The plaintiffs in Parham – who claimed to be children of American Servicemen – were in the Philippines when they filed their complaint. At the time they filed suit, they had yet to receive a final agency decision on their citizenship petitions. Parham, 374 F. App'x at 505 n. 2.

At the outset, the Fifth Circuit noted that the "plain language" of § 1503(a) limited its application to those who were within the U.S. Parham, 374 F. App'x at 505 n. 2. The Court also noted that Rusk and Kahane may permit those outside of the United States to utilize the procedures set forth in § 1503(a). Id. The Court then considered whether the plaintiffs should be required to proceed under § 1503(a) or § 1503(b), but decided "we need not decide which of these two provisions is appropriate." Id.

The Fifth Circuit arrived at its conclusion because – whether the plaintiffs were permitted to proceed under § 1503(a) or § 1503(b) – there was no final agency action, so judicial review was "currently inappropriate." Id. Thus, the Fifth Circuit did not decide the availability of § 1503(a) for persons who are not within the United States. Indeed, given the posture of case, that issue was not ripe for decision.

As previously noted, unpublished opinions from the Fifth Circuit are not definitive resolution of contested issues, but may be persuasive. Ballard v. Burton, 444 F.3d 391, 401 n. 7 (5th Cir. 2006). Moreover, given the absence of specific direction and the express failure to decide the applicability of § 1503(a) to individuals located outside of the United States, the weight to be accorded to Parham in the current situation is limited. In short, given that the Fifth Circuit addressed the § 1503(a) issue in a single footnote; in an unpublished decision; and did not conclusively resolve the question, Parham provides little guidance in resolving the matter. Accordingly, the Court believes that the plain language of the statute

should control. See In re Universal Seismic Associates, Inc., 288 F.3d 205, 207 (5th Cir. 2002) ("as in any case of statutory interpretation, we look to the plain language of the statute, reading it as a whole and mindful of the linguistic choices made by Congress.").

This does not mean that Hinojosa is left without a vehicle through which to pursue her citizenship claim. She may still follow the procedures set forth in § 1503(b) and § 1503(c). What she cannot do, given that she is not present in the United States, is pursue relief under § 1503(a). Accordingly, this claim should be dismissed.

**IV. Recommendation**

It is recommended that the motion to dismiss filed by Defendants Petra Horn, John F. Kerry, Jeh Johnson and the United States of America be granted. Dkt. No. 7. It is further recommended that the complaint filed by Raquel Hinojosa be dismissed without prejudice for lack of jurisdiction.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Andrew S. Hanen, United States District Judge. 28 U.S.C. § 636(b)(1). Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district court except upon grounds of plain error or manifest injustice. See § 636(b)(1); Thomas v Arn, 474 U.S. 140, 149 (1985); Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1428-29 (5th Cir. 1996), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

DONE at Brownsville, Texas, on September 9, 2016.

_____
Ronald G. Morgan
United States Magistrate Judge