Case 1:16-cv-00010 Document 39 Filed in TXSD on 01/20/17 Page 1 of 11

United States District Court
Southern District of Texas
**ENTERED**
January 20, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RAQUEL HINOJOSA, <br> Plaintiff, <br><br> v. <br><br> PETRA HORN, Port Director, U.S. Customs and Border Protection; Hon. JOHN KERRY, Secretary of the Department of State; Hon. JEH JOHNSON, Secretary, Department of Homeland Security; and UNITED STATES OF AMERICA <br> Defendants. | § § § § § § § § § § § § § § § | Civil Action No. 1:16-cv-00010 |

## ORDER ADOPTING MAGISTRATE
## JUDGE'S REPORT AND RECOMMENDATION

This case arises from the government's denial of Raquel Hinojosa's passport application and her subsequent inability to enter the United States. Hinojosa (hereafter "Plaintiff") requests that the Court grant her habeas corpus and Administrative Procedure Act (hereafter "APA") relief, and thereafter issue a declaratory judgment granting her U.S. citizenship.

Before the Court is the "Report and Recommendation of the Magistrate Judge" (Docket No. 19) in the above-referenced case. The Magistrate Report and Recommendation (hereafter "R&R") recommends that Defendants' motion to dismiss be granted. For the reasons stated below, the "Report and Recommendation of the Magistrate Judge" (Docket No. 19) is **ADOPTED.**

I. **FACTUAL BACKGROUND**

Plaintiff claims she was born in Brownsville, Texas, through the assistance of a midwife, sometime in June 1973. Docket No. 21 at 1. Five days after Plaintiff's birth, her birth was registered with the State of Texas; the Plaintiff's name on said document is listed as Raquel Hinojosa. Docket No. 2 Ex. 1. Plaintiff also has a

1

Mexican birth certificate, stating that she was born in Matamoros, Mexico; the Mexican birth certificate lists Plaintiff's name as Raquel Flores Venegas. Docket No. 21 at 1.

Besides the different last names, there is one glaring difference between the two birth certificates – each certificate lists a different father. *Id.* The Texas birth certificate lists Mario Hinojosa Delgado as the father; the Mexican birth certificate lists Higinio Flores as the father. Docket No. 2 Ex. 2. Plaintiff attributes this inconsistency to the fact that her mother and biological father, Mario Hinojosa Delgado, ended their relationship shortly after she was born. Docket No. 21 at 1. Thereafter, Plaintiff's mother returned to Mexico and registered her as the child of Higinio Flores. *Id.* Plaintiff grew up believing Flores was her father. *Id.* At some point in Plaintiff's life, she discovered that Flores was not her biological father. *Id.* She subsequently procured a DNA test showing Mario Hinojosa Delgado as her biological father. *Id.*

In July of 2014, Plaintiff filed a passport application, supported by her Texas birth certificate, her DNA test, and affidavits from Mario Hinojosa Delgado and Plaintiff's older half-sister, confirming the Texas birth, with the United States Department of State (hereafter "DOS"). *Id.* On September 10, 2015, DOS requested that Plaintiff provide additional evidence, including information on why she grew up believing Flores was her father. *Id.* She responded on October 9, 2015. *Id.* at 2. On November 13, 2015, DOS denied her application, citing the Mexican birth certificate as evidence that her Texas birth certificate, filed by the midwife, was fraudulent. *Id.* Thus, Plaintiff claims she is currently unable to enter the United States. Docket No. 1 at 1.

## II. **PROCEDURAL HISTORY**

On January 15, 2016, Plaintiff filed a "Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief" (Docket No. 1), seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, and a declaratory judgment that

she is a U.S. citizen. Docket No. 1 at 3. She also asserts federal subject-matter jurisdiction exists under the APA. *Id.*

On March 28, 2016, Defendants timely filed "Defendants' Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b) (1)" (Docket No. 7). First, Defendants' claim that Plaintiff's request for a writ of habeas corpus fails because she is not "in custody" and she has not exhausted her administrative remedies. Docket No. 7 at 4. Second, Defendants' claim that Plaintiff cannot assert jurisdiction under 8 U.S.C. § 1503(a) because she is not "within the United States," as required by the statute; instead, Defendants' argue, she must proceed through § 1503(b) and (c). *Id.* at 4–5. Lastly, Defendants' claim that the APA does not provide the Court with jurisdiction over Plaintiff's case. *Id.* at 12.

On April 9, 2016, Plaintiff timely filed "Petitioner's Opposition to Respondents' Motion to Dismiss Petitioner's Petition/Complaint Pursuant to Fed. R. Civ. P. 12(b) (1)" (Docket No. 9). Plaintiff argues that she is "in custody" because she is a U.S. citizen who is unable to return to her home country and that she is not required to follow § 1503(b) and (c) because these provisions do not provide an adequate remedy at law. Docket No. 9 at 13, 21. She also asserts that the APA, pursuant to *Rusk v. Cort*, 369 U.S. 367 (1962), grants the Court subject-matter jurisdiction over her claims. *Id.* at 10.

On April 19, 2016, Defendants timely filed "Defendants' Reply in Support of Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b) (1)" (Docket No. 12). Defendants reiterate that Plaintiff is not "in custody" and that the APA does not grant this Court subject-matter jurisdiction over this case. Docket No. 12 at 3–4.

On September 9, 2016, the Magistrate Judge filed the "Report and Recommendation of the Magistrate Judge" (Docket No. 19). First, the Magistrate held that Plaintiff's request for habeas corpus fails for two reasons: (1) Plaintiff is not "in custody," because she "is not being subjected to restraints that are not shared by all U.S. citizens," and (2) Plaintiff has not exhausted all her administrative remedies. Docket No. 19 at 8–9. Second, the Magistrate held that the APA does not grant the Court subject-matter jurisdiction because the denial of

Plaintiff's application does not constitute "final agency action." *Id.* at 10. Lastly, the Magistrate held that § 1503 (b) and (c), not § 1503(a), are the correct avenues for Plaintiff to seek redress for the denial of her passport. *Id* at 10, 11–14.

On September 23, 2016, Plaintiff filed "Petitioner's Objections to the Magistrate's Report and Recommendation" (Docket No. 21). Plaintiff re-argues that she is "in custody," that she is not required to exhaust her administrative remedies, and that the APA grants the Court subject-matter jurisdiction. Docket No. 21. Plaintiff also abandons her § 1503(a) claim. *Id.* at 11 n.5.

On October 6, 2016, Defendants filed "Defendants' Response to Petitioner's Objections to Magistrate Judge's Report and Recommendation" (Docket No. 24). On October 17, 2016, Plaintiff filed "Plaintiff's Reply in Support of Her Objections to the U.S. Magistrates Report and Recommendation" (Docket No. 28). The next day Plaintiff filed "Plaintiff's Amended Reply in Support of Her Objections to the U.S. Magistrates Report and Recommendation" (Docket No. 29). The arguments raised in these documents reiterated points in earlier briefs.

On November 17, 2016, this Court issued an "Order" (Docket No. 34), ordering the parties to brief Plaintiff's claim that "8 U.S.C. § 1185(b) is unconstitutional as applied because it infringes on the fundamental right of United States citizens to return to the United States." On November 28, 2016, Plaintiff filed "Plaintiff's Response to Court Order [34] to Brief Whether U.S.C. § 1185(b) is unconstitutional as applied to her" (Docket No. 35); in summary, Plaintiff argues that although the Government has a compelling interest to keep non-nationals from entering the United States as U.S. citizens, 8 U.S.C. § 1503(b) and (c) are not sufficiently narrowly tailored to meet that compelling interest. On December 21, 2016, one day after the filing deadline, Defendants filed "Defendants' Reply to Plaintiff's Supplemental Briefing Relating to 8 U.S.C. § 1185(b)" (Docket No. 36), arguing that Plaintiff does not have standing to bring an as-applied challenge because § 1185(b) was never applied to Plaintiff. Docket No. 36 at 3–5. Defendants also raised constitutional avoidance and Procedural Due Process arguments. *Id.* at 2, 5. Defendants also filed "Defendants' Motion for Leave to File Reply Out of Time"

(Docket No. 37). On January 3, 2017, the Court entered an "Order" (Docket No. 38), granting Defendants' motion for leave to file said reply.

III. **DISCUSSION**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). A party may challenge a district court's subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b) (1). The party asserting jurisdiction bears the burden to prove the district court has jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In ruling on a Rule 12(b) (1) motion to dismiss, courts must "accept all factual allegations in the plaintiff's complaint as true." *Den Norske Stats Oljeselkap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001).

A. **The Court lacks jurisdiction to provide habeas relief.**

The federal habeas corpus statute, 28 U.S.C § 2241 et seq., allows an individual who is "in custody" due to a violation of federal law or under authority of the federal government to challenge his or her "custody." *Rosales v. Bureau of Immigration and Customs Enforcement*, 426 F.3d 733, 735 (5th Cir. 2005). In order seek habeas review, the plaintiff must first exhaust administrative remedies. *United States v. Cleto,* 956 F.2d 83, 84 (5th Cir. 1992).

A person may challenge an agency's denial of a claimed right or privilege as a U.S. citizen under 8 U.S.C. § 1503. The administrative remedies at issue are described in § 1503(b) and (c).

In relevant parts, § 1503(b) states as follows:

> [i]f any person who is not within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may make application to a diplomatic or consular officer of the United States in the foreign country in which he is residing for a certificate of identity for the purpose of traveling to a port of entry in the United States and applying for admission. Upon proof to the satisfaction of such diplomatic or consular officer that such

5

application is made in good faith and has a substantial basis, he shall issue to such person a certificate of identity. From any denial of an application for such certificate the applicant shall be entitled to an appeal to the Secretary of State, who, if he approves the denial, shall state in writing his reasons for his decision.

In relevant parts, § 1503(c) states as follows:

[a] person who has been issued a certificate of identity under the provisions of subsection (b) of this section, and while in possession thereof, may apply for admission to the United States at any port of entry, and shall be subject to all the provisions of this chapter relating to the conduct of proceedings involving aliens seeking admission to the United States. A final determination by the Attorney General that any such person is not entitled to admission to the United States shall be subject to review by any court of competent jurisdiction in habeas corpus proceedings and not otherwise.

Exhaustion requires that "all those prescribed administrative remedies which might provide appropriate relief be pursued prior to seeking relief in the federal courts." *Cleto,* 956 F.2d at 84 (quoting *Hessbrook v. Lennon*, 777 F.2d 999, 1003 (5th Cir. 1985)). "Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Fuller v. Rich*, 11 F.3d 61, 62 (quoting *Hessbrook*, 777 F.2d at 1003)).

Plaintiff objects to the Magistrate Judge's finding that the Court lacks jurisdiction to provide habeas corpus relief. Docket No. 21 at 2. Plaintiff is incorrect because, even if the Court assumes *arguendo* that she is "in custody," it is undisputed that she has not exhausted the administrative remedies available to her.

Plaintiff's exhaustion argument is threefold. First, Plaintiff argues that there are no administrative remedies to exhaust when a passport application is denied for non-nationality. Docket No. 21 at 4. She is incorrect because the statute specifically provides Plaintiff with the administrative remedy to seek redress for the denial of her application. As § 1503(b) expressly states, a person denied a right on the ground

that she is "not a national of the United States" may apply for a certificate of identity at her local embassy or consulate.

Next, Plaintiff argues that she does not have to follow the procedures prescribe by § 1503(b) and (c) because these procedures are "barely available, if [they are] available at all." Docket No. 21 at 5. She is incorrect because Plaintiff cannot escape the exhaustion requirement by arguing that it is "barely available." *See Lee v. Gonzales*, 410 F.3d 778, 786 (5th Cir. 2005) (a plaintiff "must exhaust available avenues of relief and turn to habeas only when no other means of judicial review exists"). The likelihood of success is not the measure of whether or not a remedy must be pursued. Instead, the law dictates that available remedies must be pursued prior to a habeas claim. Here, a remedy is available, pursuant to § 1503(b) and (c). It is important to note that at the conclusion of § 1503(c) the statute expressly provides for habeas review.

Lastly, Plaintiff argues that the DOS Manual (hereafter "Manual") supports her positions because it specially states that a person whose application for a passport has been denied has three possible options: he or she may (1) reapply; (2) "file a legal action in Federal court in the United States"; or (3) "apply to the U.S. embassy or consulate for 'Documentation of Identity for Travel to The United States to Apply for Admission' pursuant to 8 U.S.C. 1503(b)." Docket No. 21 at 7. She is incorrect in her interpretation of the scope of said Manual.

The Manual does not state that all of the listed options are available for a person "not within the United States." It merely provides avenues for possible challenges, which are consistent with 8 U.S.C. § 1503. The second option – file a claim in federal court— is consistent with § 1503(a), but applicable in scope only to a person within the United States. The third option – apply at the U.S. embassy—is consistent with § 1503(b) and (c), and applicable in scope to a person "not within the United States." Furthermore, even if the Court assumes *arguendo* that the Manual provided that all listed options were available to a person "not within the United States," such provision cannot override a federal statute. The Manual, unlike § 1503(b) and (c), is not a federal statute; it is merely a manual.

### B. The Court lacks jurisdiction under the APA.

The APA provides judicial review of a "final agency action for which there is no other adequate remedy in a court...." 5 U.S.C. 704. Without a "final agency action," federal courts lack subject-matter jurisdiction. *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). To be a "final agency action," the action must (1) "mark the consummation of the agency's decision making process" and (2) be an action where "rights and obligations have been determined, or from which legal consequences will flow." *Bennett v. Spears*, 520 U.S. 154, 177–78 (1997) (internal quotations omitted). An intermediate step in an administrative process "cannot be viewed as a 'consummation' of agency decision making." *Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011).

Plaintiff objects to the Magistrate Judge's finding that the Court lacks jurisdiction under the APA Docket No. 21 at 19. Plaintiff argues that, under *Rusk v. Cort*, 369 U.S. 367 (1962), the APA provides the Court subject-matter jurisdiction over her citizenship claim. Plaintiff is incorrect.

First, the denial of Plaintiff's passport application is not a final agency action. The initial denial is simply the first step in the process, not the final determination by the applicable agency. *See Qureshi*, 663 F.3d at 781. Second, Plaintiff has not exhausted her administrative remedies. *See supra* III(A). Subsequent to said denial, the Plaintiff has existing recourse in 8 U.S.C. § 1503(b) and (c).

Plaintiff argues that no final agency action or exhaustion is required for APA standing. Docket No. 21 at 19–20. Plaintiff argues that *Rusk* held that the procedures laid out in 8 U.S.C. § 1503 (b) and (c) do not need to be followed before bringing a suit under the APA. *Id.* She is incorrect because *Rusk*'s holding that the APA, without a final agency action, grants federal courts subject-matter jurisdiction has been overruled. *Califano v. Sanders*, 430 U.S. 99, 105 (1977) ("the APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions"); *see also Oryszak v. Sullivan*, 576 F.3d 522, 524 (D.C. Cir. 2009); *Trudeau v. Federal Trade Com'n*, 456 F.3d 178, 183–84 (D.C. Cir. 2006); *City of Miami v. I.C.C.*, 669 F.2d 219, 222 n. 12 (5th Cir. 1982).

Plaintiff attempts to circumvent the overruling of *Rusk* by arguing that "while the APA is no longer ... considered jurisdictional, there is no reason that jurisdiction cannot be laid, as Plaintiff did here, under 28 U.S.C. § 1331." Docket No. 21 at 19. Plaintiff misinterprets the federal-question statute. To invoke federal question jurisdiction, "a plaintiff's claim must be based on some federal law independent of that statute." *U.S. on Behalf of F.T.C. v. Larkin, Hoffman, Daly & Lindgren, Ltd*, 841 F. Supp. 899, 903 (D. Minn. 1993) (citing *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986)). Without a final agency action, jurisdiction does not vest under the APA nor § 1331.

### C. The Court lacks jurisdiction to decide Plaintiff's as-applied challenge.

Under 8 U.S.C. § 1185(b), "it is unlawful for any citizen of the United States to depart from or enter, or attempt to depart from or enter, the United States unless he bears a valid United States passport." Any plaintiff may present a facial or as-applied challenge to the constitutionality of a statute. *See Citizens United v. Fed. Election Comm'n,* 558 U.S. 310, 331 (2010). A facial challenge is "a claim that a statute is unconstitutional on its face—that is, that it always operates unconstitutionally." *Facial Challenge*, Black's Law Dictionary (10th ed. 2014). An as-applied challenge is "a claim that a law or governmental policy, though constitutional on its face, is unconstitutional as applied" to an individual. *As-Applied Challenge*, Black's Law Dictionary (10th ed. 2014). Here, Plaintiff brings an as-applied challenge.

A Plaintiff "generally cannot prevail on an as-applied challenge without showing that the law has in fact been (or is sufficiently likely to be) unconstitutionally applied to him." *McCullen v. Coakley*, 134 S.Ct. 2518, 2534 n. 4 (2014). "When [a federal court] is presented with an as-applied challenge, [it] examine[s] only the facts of the case before [it] and not any set of hypothetical facts under which the statute might be unconstitutional." *United States v. Phillips*, 645 F.3d 859, 863 (7th Cir. 2011).

9

In Plaintiff's objection to the Magistrate Judge's R&R, she raises a new issue. Plaintiff now argues that 8 U.S.C. § 1185(b) is unconstitutional as-applied to her. Plaintiff is incorrect.

Plaintiff has failed to plead sufficient facts to show that §1185(b) has been, or is sufficiently likely to be, unconstitutionally applied to her. First, it is undisputed that § 1185(b) has not been applied to Plaintiff. At no point does Plaintiff argue that § 1185(b) was applied to her. *See generally* Docket Nos. 21, 29, 35. Second, Plaintiff admits to entering the United States without a passport. Plaintiff states, "when I found out that I was born in Texas[,] I began to cross into the U.S. with my birth certificate." Docket No. 2 Ex. 4(c).

In the supplemental briefing ordered by the Court, Plaintiff failed to plead sufficient facts to support her § 1185(b) challenge. Instead, Plaintiff argued that the procedures spelled out in § 1503(b) and (c) are not the least restrictive means necessary to support the Government's "compelling interest in not admitting, as U.S. citizens, individuals who are not, in fact, U.S. citizens." Docket No. 35 at 7–8. Plaintiff's argument is incorrect; § 1503(b) and (c) are not relevant to her as-applied challenge to § 1185(b) – these are two different statutes.

IV. **CONCLUSION**

Although Plaintiff currently does not have standing to sue in federal court, she is not without recourse. Plaintiff can seek redress through § 1503 (b) and (c). Plaintiff may apply to "a diplomatic or consular officer ... for a certificate of identity for the purpose of traveling to a port of entry in the United States and applying for admission." 8 U.S.C. § 1503(b). If the diplomatic or consular officer is satisfied that the "application is made in good faith and has a substantial basis, he shall issue ... a certificate of identity." *Id.* If the application for the certificate of identity is denied, Plaintiff is entitled to appeal the decision to the Secretary of State. *Id.* If the Secretary of State denies the appeal, the Court will then have jurisdiction to hear Plaintiff's APA claim.

Alternatively, if Plaintiff is issued a certificate of identity, she "may apply for admission to the United States at any port of entry." 8 U.S.C. § 1503(c). "A final determination by the Attorney General that [Plaintiff] is not entitled to admission to the United States shall be subject to review by any court of competent jurisdiction in habeas corpus proceedings and not otherwise." *Id.* If the Attorney General denies Plaintiff admission, the Court will then have jurisdiction to hear Plaintiff's habeas corpus claim.

For the foregoing reasons, the "Report and Recommendation of the Magistrate Judge" (Docket No. 19) is **ADOPTED**. The Clerk's Office is hereby **ORDERED** to close this case.

Signed on this 20th day of January, 2017.

Rolando Olvera
United States District Judge